# Stuckert *versus* Keller.

1. In order to make a valid levy upon personal property it is not essential that the sheriff should take it into his possession. There may be circumstances under which a levy may be valid even though the sheriff did not have the property within his power or view.

2. Plaintiffs in an execution directed the sheriff to levy upon a hearse belonging to the defendant in the execution, which was in the possession of a third party. The sheriff went to the latter's premises, and demanded the hearse, saying that he came to levy upon it. He was informed that it was locked up, and he could not have it. The sheriff made ineffectual efforts to get at it or see it; he then advertised the hearse and sold it with other property actually levied upon. Subsequently the party in possession of the hearse levied upon it under a judgment obtained by him against the defendant in the execution, and bought it at the sheriff's sale under his execution. In trover by the purchaser at the first sale against the purchaser at the second sale. *Held*, that the plaintiff was entitled to recover.

February 19, 1884. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

ERROR to the Court of Common Pleas of *Lehigh county:* Of January Term, 1883, No. 308.

Trover and conversion by Edwin Keller and Samuel S. Keller, against George W. Stuckert, for a hearse. Plea not guilty. The case was, by agreement, tried without a jury, before ALBRIGHT, P. J., whose findings of fact and conclusions were as follows:

First—That on October 11, 1879, the plaintiffs entered in this Court a judgment in their favor and against Joseph Keller, on a promissory note with warrant for confession of judgment, for the sum of $5,094.

Second—That on October 11, 1879, a writ of *fieri facias* was issued on said judgment, returnable to November Term, 1879, it came to the sheriff's hands on the day aforesaid.

Third—Under said writ certain personal property of Joseph Keller was levied on and sold. The hearse here in controversy, however, was not actually levied on ; the officer's action as to it is set forth in the sixth and seventh finding. All the property sold except the hearse here in controversy was in the store of said Joseph Keller, and there the sale was held. The hearse was advertised along with the other property as required by law. At said sale the hearse was offered, and it was sold to the plaintiffs for the sum of $500.

Fourth—In 1875 Joseph Keller became the owner of said hearse, and it was still his property at the time of the said sheriff's sale, which took place on October 22, 1879.

Fifth—From 1875 down to the time of said sale said hearse was kept for storage and shelter, when not in use, at the livery stable of the defendant, Stuckert, about two blocks from said store, under an arrangement that Joseph Keller would hire the horses from Stuckert whenever he had occasion to use the hearse at funerals; that in consideration of that patronage, Stuckert agreed to charge nothing for the storage of the hearse. During all said time the hearse was kept in the carriage house of Stuckert, Joseph Keller obtaining and using it whenever he chose; the latter had the right to use or remove it whenever he desired to do so. Stuckert had no lien or claim upon the hearse.

Sixth—That the plaintiffs in the execution directed the sheriff to levy on the hearse. In consequence the sheriff, on October 11th or 12th, proceeded to the stable of Stuckert, where the hearse was, for the purpose of levying on the hearse. It was then in Stuckert's carriage house, and the door of said house was locked; it had been locked up by the defendant, Stuckert, or by his direction for the purpose of preventing a seizure thereof by the sheriff under plaintiffs' writ.

Seventh—The sheriff, when at the stable to make the levy,

demanded the hearse from the defendant's employees in charge, who informed him that he could not have it. The sheriff looked for it but he failed to find it; he never saw it until after the sheriff's sale.

Eighth—Stuckert was present at the sheriff's sale while the hearse was being offered by the crier; it has not been shown that he was there when it was struck off to the plaintiff. Before it was put up for sale, and at the place of sale, the sheriff demanded the hearse from Stuckert but the latter refused to give it up.

Ninth—On October 23, 1879, the plaintiff demanded, of Stuckert, the hearse, and the latter refused to deliver it.

Tenth—On November 12, 1879, Stuckert obtained, in this Court, a judgment against Keller, and on December 4, 1879, issued execution to January Term, 1880. Under that execution the sheriff actually seized the hearse at Stuckert's stable, where it had remained in Stuckert's possession, and on December 4, 1879, sold it to said Stuckert.

Eleventh—That at the time of demand (October 23, 1879), the value of said hearse was $650, and interest on that sum to this date (November 6, 1882) is $118.30; the amount of the value with interest added is the sum of $768.30.

Did the plaintiff acquire title to the hearse by virtue of the purchase at the sheriff's sale?

There was no such levy as would be good against other execution creditors under ordinary circumstances; the sheriff did not have the hearse in his power or control, nor was it in his view: Duncan's Ap., 1 Wr., 500; Carey *v.* Bright, 8 P. F. S., 70. In Trovillo *v.* Tilford, 6 Watts, 468, it was held that a levy was to be considered good as against a defendant in an execution, without an actual seizure, where it had been agreed between the defendant and the sheriff, that a levy by the officer should be dispensed with, a list of the goods having been furnished by the defendant, who was to remain in possession of the property. For a much stronger reason, a sale without actual seizure would be held valid against a defendant who prevented an officer from seizing the goods where the latter made an effort to levy, and was prevented from doing so by the defendant. Stuckert was only the bailee of the defendant with no right, whatever, to detain the property. At the time of the purchase by the plaintiffs, the defendant in this case was in no position to challenge the validity of the sheriff's sale. It must be held that the plaintiffs' title is good unless it is admitted that Stuckert, by virtue of his purchase under his own execution, issued afterwards, acquired a title superior to that of the plaintiffs.

But to sustain defendant's claim to the hearse under his

purchase, would be to permit him to reap the benefit of a palpable wrong, committed by himself. He had obstructed the officer in the execution of the writ of *fi. fa.*, issued by the plaintiffs. After establishing title in the defendant in the execution, and a sale by the sheriff, the plaintiffs' title is made out *prima facie.* The law presumes that the officer acted regularly and had made a levy. The defendant's attack upon that title, in the way of throwing an informality on the levy, discloses his own illegal act; he demonstrates that the sheriff did not take or see the hearse, because he, the defendant, obstructed the sheriff by locking up the carriage, with a view of preventing its being taken by the officer of the law. The defendant is not entitled to the consideration or protection of the law, either as a subsequent execution creditor, or as the purchaser at the subsequent sale. The old axiom is: " No man shall take advantage of his own wrong." Therefore the Court arrives at the following conclusions of law :

First—That on October 23, 1879, the plaintiffs had a valid title to the hearse, for damages for the conversion of which this suit is brought, and that the defendant wrongfully withheld the possession of said property from the plaintiffs.

Second—That the plaintiffs are entitled to judgment against the defendant for the sum of $768.30.

Exceptions filed to the findings and decision of the court were overruled, and judgment was entered on the decision in favor of the plaintiffs for $768.30. The defendant took this writ of error, assigning for error the overruling of his exceptions, and the said judgment.

*R. E. Wright & Son,* for the plaintiffs in error.— Although the strictness of the English rule requiring actual manual possession to be taken of personal property by the sheriff to constitute a good levy is not adhered to in Pennsylvania, yet it has always been required (with a single exception) that " a valid levy upon personal property cannot be made unless the sheriff has it within his power and control, or at least within his view : " Wood *v.* Vanarsdale, 3 Rawle, 405 ; Linton *v.* Commonwealth, 10 Wr., 294 ; Duncan's Appeal, 1 Wr., 502 ; Weidensaul *v.* Reynolds, 13 Wr., 76 ; Commonwealth *v.* Berger, 6 Wr., 285; Carey *v.* Bright, 8 P. F. S., 81; McClelland *v.* Slingluff, 7 W. & S., 134; Schuylkill Co. Appeal, 6 Cas., 358; Welsh *v.* Bell, 8 Cas., 17. The exception referred to is where the defendant himself expressly waived the levy : Trovillo *v.* Tilford, 6 Watts, 468. If this exception is to be extended to permit the action of a third party to have such effect, then a paper levy may be resorted to in all cases where the person in possession of the goods under a claim of right objects to the

levy. The fact that a levy was prevented by Stuckert, whether rightfully or wrongfully, cannot have the effect of giving the purchaser title under a sheriff's sale made without a levy.

*James S. Biery*, for the defendants in error.—The cases cited by plaintiffs in error apply to successive execution creditors, raising a question of the validity of the levy, and do not apply to this case. There are many exceptions to the rule requiring that the sheriff shall have the property levied on within his power or view: Allentown Bank *v.* Beck, 13 Wr., 394; Trovillo *v.* Tilford, 6 Watts, 468; Welsh *v.* Bell, 8 Cas., 12; Wilson's Appeal, 1 Harris, 428; Shafner *v.* Gilmore, 3 W. & S., 438; Lewis *v.* Smith, 2 S. & R., 142.

The opinion of the court was filed March 3, 1884.

PER CURIAM. It is not essentially necessary that the sheriff take actual and exclusive possession in all cases of personal property, to make a valid levy. The defendant in the execution may waive the taking of actual possession by the sheriff, and consent to a sale, where no one interested therein objects. In this case the sheriff did all he could do peaceably to get the possession. The plaintiff without any right interposed the only barrier. The defendant in the execution, was present at the sheriff's sale, and made no objection thereto. The levy was regularly entered on the execution and the property duly advertised. There was no fraud in the sale, or in the purchase. It was clearly good as against the defendant in the execution, and against one who had no right to the possession. The plaintiff in error cannot interpose his wrongful act to destroy the validity of the sheriff's sale.

Judgment affirmed.